IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 18, 2004

## STATE OF TENNESSEE v. RAYMOND K. McCRARY

**Direct Appeal from the Criminal Court for Washington County**
**No. 27453     Robert E. Cupp, Judge**

**No. E2003-02368-CCA-R3-CD - Filed September 17, 2004**

The defendant, Raymond K. McCrary, pled guilty to one count of manufacture of a Schedule VI controlled substance, marijuana, a Class E felony, and one count of possession for resale of a Schedule VI controlled substance, marijuana, also a Class E felony.  He was sentenced as a Range I, standard offender to one year in the Department of Correction on each count to be served concurrently.  On appeal, the defendant argues that the trial court abused its discretion in denying alternative sentencing.  Based on our review, we affirm the length of the sentence but modify it to reflect a period of incarceration of sixty days, with the remainder to be served on probation with appropriate conditions to be established by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

David Crockett and Jerome Cochran, Elizabethton, Tennessee, for the appellant, Raymond K. McCrary.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steven R. Finney, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The defendant was indicted for manufacture of a Schedule VI controlled substance (marijuana) and possession for resale of a Schedule VI controlled substance (marijuana). Subsequently, he filed a motion to suppress, alleging that the arresting Tennessee Bureau of Investigation ("TBI") agents conducted an unlawful warrantless search of one of his rental properties

in Johnson City. At the suppression hearing, the State introduced the defendant's confession, written out by one of the TBI agents and signed by the defendant. The defendant's testimony concerning that written confession is the centerpiece of this appeal. The trial court denied the motion to suppress, and the defendant pled guilty to both charges and was sentenced to one year on each charge, to be served concurrently. At the probation hearing, the trial court denied alternative sentencing based upon the court's belief that the defendant had committed perjury at the suppression hearing when attempting to explain his signed confession.

The confession, signed by the defendant and dated August 10, 2001, stated as follows:

> I Raymond Keith McCrary did water and light and attempt to grow marijuana. I was attempting to grow the marijuana to make a little extra money. I was attempting to grow the marijuana as far back as November. I brought [the TBI agent] into the grow room when he arrived, on this date, to show him the marijuana. I did attempt to get rid of the marijuana by destroying it (flushing it down the toilet). I brought [the TBI agent] in the room on my own in an attempt to cooperate. I found the marijuana in the room in November. I believe a black male by the name of . . . was growing the marijuana before I took it over. I have not been coerced in anyway to sign or make this statement. Again, I want to cooperate fully. When [the TBI agent] arrived, on this date, I had approximately 6 plants still growing. I had let approximately 10 plants die prior to this time.

For the sake of judicial economy, we will summarize the defendant's "perjured" testimony as well as the trial court's reasoning for denying alternative sentencing.

At the suppression hearing, the defendant, apparently to the surprise of even his own attorney, contended that the confession he actually signed began halfway down the page with the sentence "I believe a black male . . . ." The defendant accused the TBI agent of later adding everything before that sentence. The defendant's defense throughout the case was that someone else had constructed the grow room in his building without his knowledge and that once he discovered the operation, several months before his arrest, he began slowly and methodically getting rid of the marijuana, even taking some to his house for disposal. Later, the defendant contested the sentence of the confession concerning the continued growing of six marijuana plants. When asked by the trial court why he signed the confession that contained statements he did not make, the defendant first stated, "I'm illiterate" and then said, "Well, I can read and write to a certain point."[1] The defendant said that when the TBI agent read the statement back to him, "it didn't sound the same." At his probation hearing, the defendant told the trial court that he had a "dyslexic disease." The trial court found the defendant's testimony unbelievable, saying at the guilty plea hearing that the defendant's testimony

---

[1]According to the presentence report, the defendant graduated from Science Hill High School in Johnson City in 1983.

was the "most incredible thing I've ever watched in the courtroom" and that the defendant intentionally "fabricated" his story and "lied" under oath.

At the probation hearing, Zane Loveless, a former Johnson City police officer, testified that he had known the defendant since 1995. He said that the defendant was "well thought of" in the community and was a truthful person. To his knowledge, the defendant had never been involved in manufacturing, selling, or using marijuana. Loveless said that he talked to the defendant two or three days after the law enforcement officials found the marijuana, and the defendant told him that he had not given a statement.

Karen Shipley, the defendant's sister-in-law, testified that the defendant had always been a good citizen and that he worked "a lot of hours trying to take care of [Mrs. McCrary] and their three (3) children." Asked about the defendant's dyslexia, Shipley said that she had not been aware of it until a few years ago and "most often people that have those sort of problems will overcompensate, and they're not going to let people know just, you know, I don't know why they're embarrassed by it, but they are." She said the defendant had always been honest in the business dealings she and her husband had with him.

Teresa McCrary, the defendant's wife, testified that they had been married nine and a half years and had three children, ages 9, 7, and 2. She said she had not seen any marijuana plants on the patio at their home because "[t]he patio is off our garage on the very top, and I seldom go up there." The defendant never told her that he had found marijuana in his building. According to Mrs. McCrary, the defendant does have a dyslexic problem. As to the defendant's truthfulness, she said she had never "caught him in any lies."

At the probation hearing, the trial court stated that the defendant had committed perjury by lying under oath in the courtroom. Nonetheless, the trial court acknowledged that the defendant had a very good record, indicating that if it were not for the defendant's untruthfulness, he would have been "home free" and even if he had been convicted by a jury, the court would have "diverted him in a heartbeat." Although the trial court considered the defendant's presentence report to be "amazing[ly]" good, it denied alternative sentencing based on the defendant's untruthfulness:

> Anybody that listened to him knew that he was lying that day. And then the next question is whether or not the defendant might reasonably be expected to be rehabilitated, and the defendant's potential or lack of potential for rehabilitation, including the risk that during the period of probation the defendant will commit another crime. I can't trust him. He lies, not only to just, you know, it's not a lie between two individuals where you're trying to tell a little white lie to get an advantage, this is lying to God. That's who he swore to to tell the truth, and he didn't. So, you know, I do consider that in his potential for rehabilitation. When he lies under oath to try to avoid this charge, it creates a problem in this court's mind as to whether or

not he can appropriately be rehabilitated . . .[i]f he'll lie to God, he'll lie to a probation officer, and that's a problem.

The trial court concluded, "There's enough in this record, in the court's opinion, to make him serve this sentence without exception, which would mean he would be in jail for a hundred and five (105) days."

## ANALYSIS

### I.  Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct."  Tenn. Code Ann. § 40-35-401(d) (2003).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts.  State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993).  However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous.  Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

### II.  Denial of Alternative Sentencing

The defendant argues that the trial court should have placed him on probation or judicial diversion and that the denial of alternative sentencing was wrongful because the "sole basis for the confinement is that the trial court suspects he lied."

-4-

The Tennessee Criminal Sentencing Reform Act of 1989, enacted to "promote justice," Tenn. Code Ann. § 40-35-102 (2003), provides that the sentence imposed upon an offender should be the "least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4) (2003). Thus, trial judges are "encouraged" to use "alternatives to incarceration that include requirements of reparation, victim compensation and/or community service." Tenn. Code Ann. § 40-35-103(6) (2003). An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6) (2003).

If an offender meets the criteria under Tennessee Code Annotated section 40-35-102(6), the trial court "must presume that he is subject to alternative sentencing." Ashby, 823 S.W.2d at 169. However, if the court is presented with "evidence sufficient to overcome the presumption, then it may sentence the defendant to confinement according to the statutory provision." Id. The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Evidence sufficient to overcome the presumption in favor of alternative sentencing includes evidence showing that "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct," "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2003); see Ashby, 823 S.W.2d at 169.

In the present case, the trial court acknowledged that none of these factors were present. According to the presentence report, the defendant had no prior criminal record. In the words of the trial court, "the facts and circumstances surrounding this offense or the nature of the criminal conduct is no big earth shattering experience." In addition, the trial court determined that confinement in this case "can't deter anybody except [the defendant]." Finally, no "measures less restrictive than confinement" have ever been applied to the defendant, unsuccessful or otherwise, because this is his first arrest and conviction.

The sentencing considerations mandated by the legislature go beyond those included in the above three factors. A trial court should also consider the potential, or lack of potential, of the defendant for rehabilitation. It is well-established that lack of truthfulness is probative of a defendant's prospects for rehabilitation. See United States v. Grayson, 438 U.S. 41, 50-52, 98 S. Ct. 2610, 2616, 57 L. Ed. 2d 582 (1978); State v. Shane Wendall Yankee, No. 03C01-9507-CC-00200, 1996 WL 438792, at *5 (Tenn. Crim. App. Aug. 6, 1996), perm. to appeal denied (Tenn. Feb. 3, 1997).

In State v. Robert Duff and Vernita Cox, No. 02C01-9307-CR-00152, 1995 WL 390951, at *3 (Tenn. Crim. App. June 28, 1995), perm. to appeal denied (Tenn. Nov. 6, 1995), we noted that "[i]n accordance with this general principle, Tennessee courts have repeatedly held that untruthfulness is a factor which may be considered in determining the appropriateness of probation." (citing State v. Neeley, 678 S.W.2d 48, 49 (Tenn. 1984); State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983)). In addition, "[a]lthough untruthfulness is not mentioned as a factor in Tenn. Code Ann. § 40-35-103(1), this court has continued to declare it a relevant factor in determining the suitability of probation subsequent to the enactment of the 1989 Act." Id. (citing State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992)).

The issue in this case is whether the defendant's untruthfulness can be used as the only reason to deny alternative sentencing and probation.[2] Unlike the typical situation in which the defendant is untruthful at his trial or sentencing hearing, here it was at a pretrial suppression hearing. That fact does not change our analysis in this case. We addressed the same issue the defendant raises in Robert Duff and Vernita Cox, 1995 WL 390951, at **3-4, where we held that in some cases, it is proper to deny alternative sentencing based solely on the defendant's untruthfulness:

> In State v. Leone, No. 02C01-9206-CR-00148 (Tenn. Crim. App. September 29, 1993), this court reversed a trial court's denial of alternative sentencing based solely on the defendant's lack of candor to the court. On the other hand, in State v. Jenkins, 733 S.W.2d 528, 534-536 (Tenn. Crim. App. 1989) this court upheld the denial of probation based purely on the untruthfulness of the defendant.
>
> Thus it is clear that in some cases the imposition of a sentence of total confinement based solely on the ground of the defendant's untruthfulness is proper, while in other cases it is not. See State v. Russell, 773 S.W.2d 913, 915 (Tenn. Crim. App. 1989) (the Sentencing Reform Act intends that sentences should be considered on a case by case basis).

Id. (footnote omitted).

We agree with the trial court that this defendant's lack of candor and truthfulness indicates that he does not possess the attributes necessary to rehabilitate himself. Evidence in the record

---

[2]The defendant also asserts that he was entitled to judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. While the defendant does seem to meet the statutory criteria for judicial diversion, we note that the decision to grant or deny a qualified defendant judicial diversion lies within the sound discretion of the trial court. See State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Cutshaw, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). The trial court's decision will not be disturbed on appeal absent an abuse of discretion, which occurs only when the record is devoid of any substantial evidence in support of the trial court's decision. See Cutshaw, 967 S.W.2d at 344; Bonestel, 871 S.W.2d at 168; State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). That is not the case here.

supports this conclusion. We note specifically this defendant's shifting excuses for his untruthfulness and his inability to take full responsibility for his criminal behavior. We commend the trial court's desire to protect the honor and sanctity of the court and the oath taken by a witness to tell the "truth and the whole truth." However, we are ever mindful of the fact that this defendant does not have a "long history of criminal conduct." In fact, this is his first arrest or conviction. Even the trial court acknowledged the relative seriousness of the underlying crime as compared to others. Under the circumstances of this case, we conclude that the untruthfulness of the defendant "does not constitute sufficient evidence to overcome the statutory presumption that [he] is a favorable candidate for alternative sentencing." Robert Duff and Vernita Cox, 1995 WL 390951, at *4. Therefore, we conclude that the evidence supports some period of incarceration, but, as a presumptive candidate for alternative sentencing and a first-time felony offender, split-confinement is the appropriate sentence.

## CONCLUSION

The defendant's sentence is affirmed as to length but modified to reflect a period of incarceration of sixty days, with the remainder to be served on probation with appropriate conditions to be established by the trial court.

_____
ALAN E. GLENN, JUDGE